```
_____ FILED      _____ ENTERED
_____ LODGED     _____ RECEIVED

        OCT 19 2018

           AT SEATTLE
      CLERK U.S. DISTRICT COURT
   WESTERN DISTRICT OF WASHINGTON
   BY                    DEPUTY
```

Chief Judge Ricardo S. Martinez

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>KYRA EVANS,<br><br>Defendant. | NO. CR18-251RSM<br><br>**PLEA AGREEMENT** |

The United States of America, by and through Annette L. Hayes, United States Attorney for the Western District of Washington, Andrew C. Friedman and Francis Franze-Nakamura, Assistant United States Attorneys for said District, and Anthony Teelucksingh, Trial Attorney with the United States Department of Justice Computer Crime & Intellectual Property Section, and KYRA EVANS and her attorney, Corey M. Endo, enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A):

1.      **Waiver of Indictment**.  Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to the charges brought by the United States Attorney in an Information.

2.      **The Charges**.  Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enter pleas of guilty to the following charges contained in the Information.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        a.        Conspiracy, as charged in Count 1, in violation of Title 18, United

2   States Code, Section 371;

3        b.        False Statement, as charged in Count 2, in violation of Title 26,

4   United States Code, Section 7206(1).

5   By entering these pleas of guilty, Defendant hereby waives all objections to the form of

6   the charging document.  Defendant further understands that, before entering her guilty

7   pleas, she will be placed under oath.  Any statement given by Defendant under oath may

8   be used by the United States in a prosecution for perjury or false statement.

9

10        3.        **Element of the Offenses**.  The elements of the offenses to which

11   Defendant is pleading guilty are as follows:

12        a.        The elements of Conspiracy, as charged in Count 1, in violation of

13   Title 18, United States Code, Section 371, are as follows:

14        First, beginning in or about April 2012 and ending in our about September 2017,

15   there was an agreement between two or more persons to commit a crime;

16        Second, the Defendant became a member of the conspiracy knowing of at least

17   one of its objects and intending to help accomplish it; and

18        Third, one of the members of the conspiracy performed at least one overt act.

19        The conspiracy alleged is a conspiracy to commit Wire Fraud and

20   Computer Fraud and Abuse.

21        The elements of Wire Fraud are as follows:

22        First, the Defendant knowingly devised a scheme or plan to defraud, or to obtain

23   money or property by means of false or fraudulent pretenses, representations, or

24   promises;

25        Second, the statements made or facts omitted as part of the scheme were material;

26   that is, they had a natural tendency to influence or were capable of influencing a person

27   to part with money or property;

28

PLEA AGREEMENT/EVANS (CR18-251RSM) - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Third, the Defendant acted with intent to defraud; that is the intent to deceive or

2   cheat; and

3   Fourth, the Defendant transmitted or caused to be transmitted a wire in interstate

4   or foreign commerce to carry out or attempt to carry out an essential part of the scheme.

5   The elements of Computer Fraud and Abuse are as follows:

6   First, the Defendant knowingly caused the transmission of a program, code,

7   command, or information to a computer without authorization;

8   Second, as a result of the transmission, the Defendant intentionally impaired the

9   integrity or availability of data, a program, a system, or information;

10   Third, the computer was used in or affected interstate or foreign commerce or

11   communication; and

12   Fourth, during any one-year period, the loss was at least $5,000, or 10 or more

13   computers were affected.

14   b.   The elements of False Statement, as charged in Count 2, in violation of

15   Title 26, United States Code, Section 7206(1), are as follows:

16   First, the Defendant made and signed a tax return for the year 2013 that she knew

17   contained false information as to a material matter;

18   Second, the return contained a written declaration that it was being signed subject

19   to the penalties of perjury; and

20   Third, in filing the false tax return, the Defendant acted willfully.

21   4.   **The Penalties**.  Defendant understands that the statutory penalties

22   applicable to the offenses to which she is pleading guilty are as follows:

23   a.   For the offense of Conspiracy, as charged in Count 1:  a maximum

24   term of imprisonment of up to five years, a fine of up to $250,000, a period of

25   supervision following release from prison of up to three years, and a mandatory special

26   assessment of  $100.  If a probationary sentence is imposed, the probation period can be

27   for up to five years.  Defendant agrees that the special assessment shall be paid at or

28   before the time of sentencing.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    b.    For the offense of False Statement, as charged in Count 2: a

2  maximum term of imprisonment of up to three years, a fine of up to $100,000, a period of

3  supervision following release from prison of up to one year, and a mandatory special

4  assessment of $100.  If a probationary sentence is imposed, the probation period can be

5  for up to five years.  Defendant agrees that the special assessment shall be paid at or

6  before the time of sentencing.

7    Defendant understands that supervised release is a period of time following

8  imprisonment during which she will be subject to certain restrictive conditions and

9  requirements.  Defendant further understands that, if supervised release is imposed and

10  she violates one or more of the conditions or requirements, Defendant could be returned

11  to prison for all or part of the term of supervised release that was originally imposed.

12  This could result in Defendant's serving a total term of imprisonment greater than the

13  statutory maximum stated above.

14    Defendant understands that, as a part of any sentence, in addition to any term of

15  imprisonment and/or fine that is imposed, the Court may order Defendant to pay

16  restitution to any victim of the offenses, as required by law.  Defendant further

17  understands that the consequences of pleading guilty may include the forfeiture of certain

18  property, either as a part of the sentence imposed by the Court, or as a result of civil

19  judicial or administrative process.

20    Defendant agrees that any monetary penalty the Court imposes, including the

21  special assessment, fine, costs, or restitution, is due and payable immediately and further

22  agrees to submit a completed Financial Statement of Debtor form as requested by the

23  United States Attorney's Office.

24

25    5.    **Rights Waived by Pleading Guilty.**  Defendant understands that by

26  pleading guilty, she knowingly and voluntarily waives the following rights:

27    a.    The right to plead not guilty and to persist in a plea of not guilty;

28    b.    The right to a speedy and public trial before a jury of her peers;

PLEA AGREEMENT/EVANS (CR18-251RSM) - 4

c.    The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for her;

d.    The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

e.    The right to confront and cross-examine witnesses against Defendant at trial;

f.    The right to compel or subpoena witnesses to appear on her behalf at trial;

g.    The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

h.    The right to appeal a finding of guilt or any pretrial rulings.

6.    **Ultimate Sentence**.  Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

7.    **Restitution.**  The parties agree that they will recommend that the Court apportion liability for restitution owed to AT&T Mobility between Defendant and the defendants charged in related cases.  Defendant agrees to pay restitution in the apportioned amount of $280,200.00 (which shall <u>not</u> be joint and several with any other defendant).  Said restitution shall be due and payable immediately and shall be paid in accordance with a schedule of payments as proposed by the United States Probation Office and ordered by the Court.

8.    **Forfeiture of Assets**.  Defendant agrees to forfeit to the United States immediately Defendant's right, title, and interest in any and all property, real or personal, that constitutes or is derived from proceeds traceable to the charge of Conspiracy to which Defendant is pleading guilty, including, but not limited to:

a.    the entry of a money judgment in the amount of $280,200.00.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    9.    **Statement of Facts**.  The parties agree on the following facts.  Defendant

2    admits she is guilty of the charged offenses:

3

4    From July 2010 to October 2013, Defendant, KYRA

5    EVANS, was an employee of AT&T.  Defendant worked at

6    AT&T's Customer Care telephone call center located in

7    Bothell, Washington.  As part of Defendant's job at AT&T,

8    Defendant answered telephone calls from customers and

9    unlocked phones when customers met certain criteria set by

10   AT&T.  Defendant was trained on the criteria that AT&T

11   used to determine whether a customer was eligible to have a

12   phone unlocked.  Defendant was also trained on how to use

13   AT&T's unlocking program.  Defendant was aware that

14   AT&T would suffer a financial loss if a customer had a phone

15   unlocked before he or she completed a service contract or an

16   installment plan, because AT&T likely would not receive the

17   money it was owed by that customer.

     As a customer service representative, Defendant had

     credentials (a username and password) to log into both her

     workstation and a variety of proprietary programs on that

     workstation that AT&T used to conduct business.  Defendant

     received training at AT&T on network security.  As a result,

     Defendant knew that her login credentials were for her use

     only, and that AT&T would assume that only she was using

     her login credentials to access her workstation and the

     programs on that workstation.

     In approximately September 2012, M.S., another

     employee at AT&T's call center in Bothell, told Defendant

     that she could make a lot of money "on the side" by

     unlocking telephones.  M.S. subsequently arranged a

     telephone call between the Defendant, M.S., and an

     individual who used the name "Frank."  (Defendant now

     understands that the man whom she knew as "Frank" is, in

     fact, Muhammad Fahd.)  "Frank" told Defendant he wanted

     Defendant to unlock cell phones, that it was a good

     opportunity, and that Defendant would be crazy to pass it up.

     During that first telephone call, and several subsequent

     telephone calls, "Frank" explained that he wanted to send

Defendant lists of international mobile equipment identity numbers ("IMEIs") for cell phones. "Frank" explained that he wanted Defendant to unlock these cell phones, in bulk, using AT&T's unlocking application.

"Frank" gave Defendant detailed instructions as to how Defendant was to communicate with him. At the outset, "Frank" told Defendant to set up a new email account that was not in her own name. Defendant followed "Frank's" instructions and set up an email account with the address yanghov687@gmail.com. Later, Defendant set up another email account with the address yanghov687@yahoo.com. Defendant used both accounts to communicate with "Frank's" email accounts, which included unlockoutlet@gmail.com and unlockoutlet@ymail.com. On October 14, 2012, "Frank" used the account unlockoutlet@gmail.com to send Defendant a picture of himself.

"Frank" and Defendant communicated regularly by email and telephone. Beginning in September 2012, Defendant regularly unlocked phones for "Frank." "Frank" emailed Defendant lists of IMEIs for cellular phones for Defendant to unlock. Most or all of "Frank's" emails travelled from outside the United States to the State of Washington. After "Frank" sent Defendant a list of IMEIs to unlock, Defendant would cut and paste the list into a new file and then would submit that file to AT&T's unlocking system to unlock all of the IMEIs on the list. Defendant used different workstations, such as workstations in a breakroom, in order to avoid attracting attention to herself.

Defendant knew each time Defendant submitted an unlock request in this fashion, Defendant was misrepresenting to AT&T that the unlock request was on behalf of a customer who met AT&T's unlocking criteria. Defendant also understood that unlocking a phone when the eligibility criteria were not satisfied was causing harm to AT&T by depriving the company of future payments from the customer if that customer chose to leave AT&T's cellular network.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2          In the Spring of 2013, AT&T implemented a new
   unlocking system that made it more difficult to unlock IMEIs
3  for "Frank." In response, "Frank" told Defendant that he had
   hired a computer programmer to design a program (malware)
4  that Defendant could put on AT&T's computer system to
   unlock phones. To help develop the malware, Defendant
5  provided confidential information to "Frank" about AT&T's
   computer system and unlocking procedures. "Frank," in turn,
6  told Defendant that he had provided the information to his
7  malware developer so the developer could tailor the malware
   to work on AT&T's computers.
8

9          Defendant helped "Frank" test multiple versions of the
10 malware until the malware became functional in April 2013.
   Once Defendant installed the malware, the malware had the
11 ability to use Defendant's AT&T credentials to unlock
12 phones without Defendant's active involvement. When
   Defendant showed up to work, all Defendant had to do was
13 log into her workstation and activate the malware. The
14 malware would interact with AT&T's computer system and
   perform the unauthorized unlocks in the background during
15 the day, and would communicate with "Frank," all while
16 Defendant performed her legitimate job responsibilities.

17         In addition to the unlocking malware, "Frank" had
18 Defendant use programs to capture additional information
   about AT&T's computer system and about the network
19 credentials of other AT&T employees. For example, "Frank"
20 sent Defendant a program called FiddlerCap so that
   Defendant could capture other AT&T employees' login
21 credentials

22         "Frank" also asked Defendant to recruit other AT&T
23 employees to help perform unauthorized unlocks. "Frank"
   said he would pay Defendant $15,000 if Defendant could
24 recruit another person. As a result, Defendant spoke to
25 another AT&T employee, D.W., who agreed to perform
26 unauthorized unlocks.

27         At the start of the scheme, in 2012, "Frank" told
28 Defendant to set up a fake business and a bank account for

PLEA AGREEMENT/EVANS (CR18-251RSM) - 8

that business to receive payments from him.  "Frank" told Defendant to create a fake invoice for every deposit that was made into the fake business's bank account to create the appearance that the money was payment for a genuine service that Defendant's company had provided.  Pursuant to "Frank's" instructions, Defendant set up a fake company called Jacinda Consulting and a bank account for the business in the name Kyra J. Evans dba Jacinda Consulting.  Between 2012 and October 2013, Defendant received $280,200 through the fake business for her part in the illegal unlocking scheme.

In September 2013, AT&T investigators discovered the malware that M.S. and Defendant were using to conduct unauthorized.  Shortly after being questioned by AT&T's investigators, Defendant left the company.

Defendant understands that AT&T's forensic analysis shows that, between June 27, 2013, and August 27, 2013, Defendant submitted 440,944 unlock requests, many of them milliseconds apart.  Defendant agrees that this is a reasonable estimate of the number of cellular telephones that she fraudulently unlocked during this two-month window.  Defendant understands that AT&T's forensic analysis shows that the total number of cellular telephones fraudulently unlocked by members of the scheme substantially exceeded 1,000,000, that more than 10 AT&T computers were affected, and that, although AT&T estimates that its losses are in the tens of millions of dollars (but still is working to calculate its losses), AT&T unquestionably suffered more than $5,000 in losses.

Defendant filed tax returns for the years 2012 and 2013.  On those tax returns, Defendant reported the salary that she had received from her legitimate employment.  However, Defendant failed to report the payments that she had received for participating in the fraudulent unlocking of cellular telephones.  Defendant agrees that the amount of income that she failed to report was $280,200.  Defendant knew that she was legally required to report this income from these other companies.  Based upon that amount of

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

unreported income, the additional tax Defendant should have
paid for those years was approximately $66,961.00.

On February 10, 2014, Defendant filed a tax return for
the 2013 tax year that reported that taxable income of
$12,793.00.  That tax return failed to report $208,200 of
payments that Defendant had received for her participation in
the fraudulent unlocking of cellular telephones.  Defendant
knew that she was required to report this income.  The tax
return, which was filed electronically, contained a written
declaration that it was signed under penalty of perjury.

The parties agree that the Court may consider for the purpose of sentencing
additional facts contained in the Presentence Report, subject to objections by the parties,
as well as any facts presented by either party at sentencing.

10.   **United States Sentencing Guidelines**.  Defendant understands and
acknowledges that the Court must consider the sentencing range calculated under the
United States Sentencing Guidelines and possible departures under the Sentencing
Guidelines together with the other factors set forth in Title 18, United States Code,
Section 3553(a), including:  (1) the nature and circumstances of the offenses; (2) the
history and characteristics of the defendant; (3) the need for the sentence to reflect the
seriousness of the offenses, to promote respect for the law, and to provide just
punishment for the offenses; (4) the need for the sentence to afford adequate deterrence to
criminal conduct; (5) the need for the sentence to protect the public from further crimes
of the defendant; (6) the need to provide the defendant with educational and vocational
training, medical care, or other correctional treatment in the most effective manner;
(7) the kinds of sentences available; (8) the need to provide restitution to victims; and
(9) the need to avoid unwarranted sentence disparity among defendants involved in
similar conduct who have similar records.  Accordingly, Defendant understands and
acknowledges that:

a.     The Court will determine applicable Defendant's Sentencing
Guidelines range at the time of sentencing;

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1          b.     After consideration of the Sentencing Guidelines and the factors in

2 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the

3 maximum term authorized by law;

4          c.     The Court is not bound by any recommendation regarding the

5 sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines

6 range offered by the parties or the United States Probation Department, or by any

7 stipulations or agreements between the parties in this Plea Agreement; and

8          d.     Defendant may not withdraw her guilty pleas solely because of the

9 sentence imposed by the Court.

10     11.     **Tax Loss Amount.** The United States and Defendant stipulate and agree

11 that the correct amount of tax loss for purposes of sentencing is $66,961.00. Defendant

12 understands that this Plea Agreement does not preclude the Internal Revenue Service

13 from assessing and determining any additional civil tax, penalties, and/or interest that

14 may be owed by Defendant.

15     11.     **Acceptance of Responsibility.** At sentencing, *if* the district court

16 concludes Defendant qualifies for a downward adjustment acceptance for acceptance of

17 responsibility pursuant to USSG § 3E1.1(a) and Defendant's offense level is 16 or

18 greater, the United States will make the motion necessary to permit the district court to

19 decrease the total offense level by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b),

20 because Defendant has assisted the United States by timely notifying the United States of

21 her intention to plead guilty, thereby permitting the United States to avoid preparing for

22 trial and permitting the Court to allocate its resources efficiently.

23     12.     **Non-Prosecution of Additional Offenses.** As part of this Plea Agreement,

24 the United States Attorney's Office for the Western District of Washington and the

25 Computer Crime & Intellectual Property Section of the United States Department of

26 Justice agree not to prosecute Defendant for any additional offenses known to the

27 government as of the time of this Agreement that are based upon evidence in its

28 possession at this time, and that arise out of the conduct giving rise to this investigation.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  In this regard, Defendant recognizes the United States has agreed not to prosecute all of

2  the criminal charges the evidence establishes were committed by Defendant solely

3  because of the promises made by Defendant in this Agreement.  Defendant agrees,

4  however, that for purposes of preparing the Presentence Report, the United States

5  Attorney's Office will provide the United States Probation Office with evidence of all

6  conduct committed by Defendant.

7       Defendant agrees that any charges to be dismissed before or at the time of

8  sentencing, and any other potential charges that were discussed but were not filed, were

9  substantially justified in light of the evidence available to the United States, were not

10  vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for

11  any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

12       13.    **Breach, Waiver, and Post-Plea Conduct.**  Defendant agrees that, if

13  Defendant breaches this Plea Agreement, the United States may withdraw from this Plea

14  Agreement and Defendant may be prosecuted for all offenses for which the United States

15  has evidence.  Defendant agrees not to oppose any steps taken by the United States to

16  nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea

17  Agreement.  Defendant also agrees that if Defendant is in breach of this Plea Agreement,

18  Defendant has waived any objection to the re-institution of any charges in the Indictment

19  that were previously dismissed or any additional charges that had not been prosecuted.

20       Defendant further understands that if, after the date of this Plea Agreement,

21  Defendant should engage in illegal conduct, or conduct that violates any conditions of

22  release or the conditions of her confinement, (examples of which include, but are not

23  limited to, obstruction of justice, failure to appear for a court proceeding, criminal

24  conduct while pending sentencing, and false statements to law enforcement agents, the

25  Pretrial Services Officer, Probation Officer, or Court), the United States is free under this

26  Plea Agreement to file additional charges against Defendant or to seek a sentence that

27  takes such conduct into consideration by requesting the Court to apply additional

28  adjustments or enhancements in its Sentencing Guidelines calculations in order to

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 │ increase the applicable advisory Guidelines range, and/or by seeking an upward departure

2 │ or variance from the calculated advisory Guidelines range.  Under these circumstances,

3 │ the United States is free to seek such adjustments, enhancements, departures, and/or

4 │ variances even if otherwise precluded by the terms of the plea agreement.

5 │       14.    **Waiver of Appellate Rights and Rights to Collateral Attacks.**

6 │ Defendant acknowledges that by entering the guilty pleas required by this Plea

7 │ Agreement, Defendant waives all rights to appeal from her conviction and any pretrial

8 │ rulings of the court.  Defendant further agrees that, provided the court imposes a custodial

9 │ sentence that is within or below the Sentencing Guidelines range (or the statutory

10 │ mandatory minimum, if greater than the Guidelines range) as determined by the court at

11 │ the time of sentencing, Defendant waives to the full extent of the law:

12 │       a.    Any right conferred by Title 18, United States Code, Section 3742,

13 │ to challenge, on direct appeal, the sentence imposed by the court, including any fine,

14 │ restitution order, probation or supervised release conditions, or forfeiture order (if

15 │ applicable); and

16 │       b.    Any right to bring a collateral attack against the conviction and

17 │ sentence, including any restitution order imposed, except as it may relate to the

18 │ effectiveness of legal representation; and

19 │       This waiver does not preclude Defendant from bringing an appropriate motion

20 │ pursuant to 28 U.S.C. § 2241, to address the conditions of her confinement or the

21 │ decisions of the Bureau of Prisons regarding the execution of her sentence.

22 │       If Defendant breaches this Plea Agreement at any time by appealing or collaterally

23 │ attacking (except as to effectiveness of legal representation) the conviction or sentence in

24 │ any way, the United States may prosecute Defendant for any counts, including those with

25 │ mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea

26 │ Agreement.

27 │       15.    **Voluntariness of Plea.**  Defendant agrees that she has entered into this Plea

28 │ Agreement freely and voluntarily and that no threats or promises, other than the promises

PLEA AGREEMENT/EVANS (CR18-251RSM) - 13

1   contained in this Plea Agreement, were made to induce Defendant to enter her pleas of

2   guilty.

3         16.     **Statute of Limitations**.  In the event this Agreement is not accepted by the

4   Court for any reason, or Defendant has breached any of the terms of this Plea Agreement,

5   the statute of limitations shall be deemed to have been tolled from the date of the Plea

6   Agreement to:  (1) thirty (30) days following the date of non-acceptance of the Plea

7   Agreement by the Court; or (2) thirty (30) days following the date on which a breach of

8   the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

9         17.     **Completeness of Agreement**.  The United States and Defendant agree that,

10   except as to certain matters set forth during the plea colloquy in open Court, these terms

11   constitute the entire Plea Agreement between the parties.  This Plea Agreement binds

12   only the United States Attorney's Office for the Western District of Washington and the

13

14   //

15

16

17

18   //

19

20

21   //

22

23

24

25   //

26

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Computer Crime & Intellectual Property Section of the United States Department of

2  Justice.  It does not bind any other United States Attorney's Office or any other office or

3  agency of the United States, or any state or local prosecutor.

4      DATED:  this ⎵ day of October, 2018.

5

6

7

8  _____
   KYRA EVANS
9  Defendant

10

11  _____
   COREY M. ENDO
12  Attorney for Defendant

13

14  _____
   ANDREW C. FRIEDMAN
15  Assistant United States Attorney

16

17  _____
   FRANCIS FRANZE-NAKAMURA
18  Assistant United States Attorney

19

20

21  _____
   ANTHONY TEELUCKSINGH
22  Trial Attorney
   Computer Crime & Intellectual Property
23  Section, U.S. Department of Justice

24

25

26

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970